O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC HENRY SALDIVAR,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>RIVERSIDE POLICE DEPARTMENT, et al.,<br><br>　　　　Defendants. | Case No. 2:20-cv-02081-CAS-PD<br><br>**ORDER ACCEPTING FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE** |

## I.   INTRODUCTION

On November 26, 2024, United States Magistrate Judge Patricia Donahue (the "Magistrate Judge") issued a Report and Recommendation denying defendant Evan Wright and defendant Abel Soria's (collectively, "defendants") motion for summary judgment. Dkt. 133 ("R&R"). On December 10, 2024, defendants filed their Objections to the R&R. Dkt. 134 ("Obj.").

Pursuant to 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b), the Court has reviewed the records and files herein, the R&R of the Magistrate Judge, and defendants' Objections thereto. After having made a *de novo* determination of the

1

portions of the R&R to which defendants' Objections were directed, the Court accepts the report, findings, and recommendations of the Magistrate Judge.

## II.     BACKGROUND

On March 23, 2022, plaintiff Eric Henry Saldivar ("plaintiff"), who is represented by counsel, filed the operative pleading in this case, the fourth amended complaint. Dkt. 53. In his operative complaint, plaintiff sues defendants, Riverside Police Department Officers Evan Wright ("Wright") and Abel Soria ("Soria"), in their individual and official capacities. Id. at 3-4. Plaintiff is the father of the decedent, Ernie David Saldivar ("decedent"). Id. at 2-3; dkt. 54 at 2, 5. Plaintiff's complaint alleges that defendants used deadly force in seizing the decedent, resulting in his death on March 8, 2018 at 9931 Willowbrook Road in Jurupa Valley, California. Dkt. 54 at 2, 5.

Plaintiff asserts two claims for relief: (1) as decedent's successor in interest, plaintiff alleges that decedent's Fourth Amendment rights were violated pursuant to 42 U.S.C. § 1983 ("Section 1983"); and (2) in his individual capacity, plaintiff alleges that his Fourteenth Amendment rights as decedent's father were violated, also pursuant to Section 1983. Dkt. 53 at 11, 16.

On May 9, 2024, defendants filed a motion for summary judgment, or in the alternative, partial summary judgment, as well as supporting filings. Dkts. 111-113. This included audio recordings of the incident on March 8, 2018, and a recorded interview with witness Lisa Castillo. Dkt. 112. On July 10, 2024, plaintiff filed an opposition, as well as supporting filings. Dkts. 121-29. On July 24, 2024 and July 25, 2024, defendants filed their reply and supporting filings. Dkts. 124-130.

On November 26, 2024, the Magistrate Judge issued the instant R&R, finding that disputed issues of material fact existed as to the following issues: (1) whether decedent was the presumed parent of a minor child referred to as "E.R.";

(2) whether plaintiff and decedent maintained a sufficient familial relationship cognizable by the Fourteenth Amendment; (3) whether defendants' use of force was reasonable; and (4) whether the alleged violation of decedent's Fourth Amendment right was "clearly established" at the time of the incident.  R&R at 9-34.  Accordingly, the Magistrate Judge denied defendants' motion because she found that defendants failed to establish, as a matter of law, that plaintiff lacked standing, that defendants' use of force was reasonable, or that defendants were entitled to qualified immunity.  Id.

As the facts at issue are comprehensively set forth in the R&R, the Court does not repeat them unless relevant to the Court's decision.  Id. at 7-36.

### III.    LEGAL STANDARD

"A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C); see also Fed. R. Civ. P. 72(b)(3) (stating "[t]he district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to," and "[t]he district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions").  Proper objections require "specific written objections to the proposed findings and recommendations" of the magistrate judge.  Fed. R. Civ. P. 72(b)(2).  "A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1)(C); see also United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003) ("The statute makes it clear that the district judge must review the magistrate judge's findings and recommendations *de novo* if objection is made, but not otherwise.").  Where no objection has been made, arguments challenging a finding are deemed waived.  See 28 U.S.C. § 636(b)(1)(C) ("Within fourteen days after being served with a

copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court."). Moreover, "[o]bjections to a R&R are not a vehicle to relitigate the same arguments carefully considered and rejected by the Magistrate Judge." Chith v. Haynes, No. C18-5342 BHS, 2021 WL 4744596, at *1 (W.D. Wash. Oct. 12, 2021).

## IV. DISCUSSION

The Court agrees with the Magistrate Judge's recommendation that defendants' motion for summary judgment must be denied, as plaintiff has demonstrated genuine disputes of material fact as to plaintiff's standing and the reasonableness of defendants' use of force during the incident. R&R at 9, 23.

Taken together, the Court finds that defendants' Objections fail to recognize that, in ruling on a motion for summary judgment, "the inferences to be drawn from the underlying facts… must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted). Because of the remaining factual disputes at this juncture, the Court concludes that these questions may be better decided on a Rule 50 motion following trial, when the Court has heard all of the evidence. The Court proceeds to address each Objection filed by defendants in turn.

### A. First Objection: Standing to Assert Fourth Amendment Claim

First, defendants object to the Magistrate Judge's conclusion that factual disputes prevent the Court from adjudicating plaintiff's standing to assert the Fourth Amendment claim as a matter of law. Obj. at 2. The Magistrate Judge correctly noted that, in a Section 1983 action, "the survivors of an individual killed as a result of an officer's excessive use of force may assert a Fourth Amendment claim on that individual's behalf if the relevant state's law authorizes a survival action." R&R at 10 (citing Moreland v. Las Vegas Metro. Police Dep't, 159 F.3d 365, 369 (9th Cir. 1998)). Further, "[t]he party seeking to bring a survival action

bears the burden of demonstrating that a particular state's law authorizes a survival action and that the plaintiff meets that state's requirements for bringing a survival action." Id.

California's statutory requirements for standing to bring a survival action are stated under Cal. Civ. Proc. Code § 377.30: "A cause of action that survives the death of the person entitled to commence an action or proceeding passes to the decedent's successor in interest…, and an action may be commenced by the decedent's personal representative or, if none, by the decedent's successor in interest."[1]  Cal. Civ. Proc. Code § 377.30.  See also Tatum v. City & Cnty. of San Francisco, 441 F.3d 1090, 1094, n.2 (9th Cir. 2006) ("Where there is no personal representative for the estate, the decedent's 'successor in interest' may prosecute the survival action if the person purporting to act as successor in interest satisfies the requirements of California law.").

The "successor in interest" is defined as the beneficiary of the decedent's estate or "other successor in interest who succeeds to a cause of action." Cal. Civ. Proc. Code § 377.11.  Where a decedent passes intestate, as alleged in plaintiff's successor in interest declaration, see dkt. 54 ¶ 4, the "beneficiary of the decedent's estate" is "a person who succeeds to claims or property under Probate Code

---

[1] The Court acknowledges that the Magistrate Judge examined plaintiff's standing to assert his Fourth Amendment claim under Cal. Civ. Proc. Code § 377.60, not Cal. Civ. Proc. Code § 377.30.  See R&R at 11-18.  Defendants also argued only under § 377.60 in their underlying motion.  See dkt. 111 at 13-16.  However, the appropriate statute is § 377.30, which applies to survival actions, not § 377.60, which applies to wrongful death actions.  See Hayes v. Cnty. of San Diego, 736 F.3d 1223, 1229 (9th Cir. 2013) (finding that district court erred in applying section 377.60, instead of section 377.30, to analyze a Section 1983 survival action based on excessive force).

sections 6401 and 6402."[2]  Cal. Civ. Proc. Code § 377.10(b).  Under section 6401, when a decedent has a surviving spouse, intestate succession proceeds as follows:

> (a) As to community property, the intestate share of the surviving spouse is the one-half of the community property that belongs to the decedent under Section 100.
>
> …
>
> (c) As to separate property, the intestate share of the surviving spouse is as follows:
>
> (1) The entire intestate estate if the decedent did not leave any surviving issue, parent, brother, sister, or issue of a deceased brother or sister.
>
> (2) One-half of the intestate estate in the following cases:
>
> (A) Where the decedent leaves only one child or the issue of one deceased child.
>
> (B) Where the decedent leaves no issue, but leaves a parent or parents or their issue or the issue of either of them.
>
> (3) One-third of the intestate estate in the following cases:
>
> (A) Where the decedent leaves more than one child.
>
> (B) Where the decedent leaves one child and the issue of one or more deceased children.
>
> (C) Where the decedent leaves issue of two or more deceased children.

Cal. Prob. Code § 6401.  Under section 6402,

> [T]he part of the intestate estate not passing to the surviving spouse, under Section 6401, or the entire intestate estate if there is no surviving spouse, passes as follows:

---

[2] While not a subject of defendants' Objections or defendants' underlying motion, the Court agrees with the Magistrate Judge's finding that plaintiff's successor in interest declaration—another requirement for survival actions—is compliant with Cal. Civ. Proc. Code § 377.32.  See R&R at 12, n.5.

6

> (a) To the issue of the decedent, the issue taking equally if they are all of the same degree of kinship to the decedent, but if of unequal degree those of more remote degree take in the manner provided in Section 240.
>
> (b) If there is no surviving issue, to the decedent's parent or parents equally.
>
> …

Cal. Prob. Code § 6402(a)-(b).

Here, it appears undisputed that decedent had a surviving spouse, Xochilt V. Robles-Saldivar ("Xochilt"). See dkt. 121 at 22; see also dkt. 54 ¶ 4 ("Besides [plaintiff], Ernie Saldivar was survived by his wife, Xochilt V. Saldivar[.]"). Accordingly, the Court must determine (1) whether decedent's Fourth Amendment claim constitutes community property, quasi-community property, or separate property, and (2) whether decedent left any "issue," i.e., children.

The Court begins with an analysis of the characterization of this property. Defendants do not address this issue in their motion, reply, or Objections. See generally dkt. 111, dkt. 130, Obj. In his opposition brief, plaintiff argues that the Fourth Amendment claim is decedent's separate property, because it accrued after decedent and Xochilt had separated.[3] See dkt. 121 at 2. To support this assertion,

---

[3] As an alternative to his argument about separate property, plaintiff appears to argue in his opposition brief that, even if the Fourth Amendment claim is community property that would pass to Xochilt in its entirety under Cal. Prob. Code § 6401(a), plaintiff still has standing, because Xochilt assigned her right to bring the Fourth Amendment claim to plaintiff. Dkt. 121 at 23. Plaintiff relies on an agreement entitled "Assignment of Claims for Damages," signed by Xochilt as assignor and plaintiff as assignee. Dkt. 121-11, Ex. 21. Defendants do not properly rebut this argument, as they only contend that wrongful death actions are not assignable. See dkt. 111 at 15. As previously stated, the Fourth Amendment claim is a survival action, not a wrongful death action. Nevertheless, the Court finds that this alternative argument does not confer standing on plaintiff. This is because "causes of action for personal injuries arising out of a tort are not assignable nor are those founded upon wrongs of a purely personal nature such as to the reputation or the feelings of the one injured." Timed Out, LLC v. Youabian,

7

1  plaintiff relies on a declaration filed by decedent's brother, which states that
2  decedent had not lived with Xochilt and had attempted to leave her since he was
3  paroled in June 2017, up until his death in March 2018.  Dkt. 121-29 ¶¶ 13, 16.

4      The Court finds that plaintiff has established a genuine dispute of material
5  fact as to whether decedent's Fourth Amendment claim constitutes separate
6  property.  Under Cal. Fam. Code § 781(a)(2), "[m]oney or other property received
7  or to be received by a married person in satisfaction of a judgment for damages for
8  personal injuries… is the separate property of the injured person if the cause of
9  action for the damages arose as follows: … (2) While the injured spouse is living
10 separate from the other spouse."  Cal. Fam. Code § 781(a)(2); see also Hogoboom
11 & King, Cal. Practice Guide: Family Law (The Rutter Group, 2005) § 8:266 ("The
12 money or property is the injured spouse's separate property if the cause of action
13 arose (i) after entry of judgment of legal separation or dissolution, or (ii) while the
14 injured spouse is living separate from the other spouse." (citing Cal. Fam. Code §
15 781(a) and In re Marriage of Klug, 130 Cal. App. 4th 1389, 1397 (2005)).  Given
16 that plaintiff presents evidence that decedent and Xochilt lived separately at the
17 time of the incident in March 2018, there is at least a genuine dispute as to whether
18 decedent's Fourth Amendment claim constitutes separate property.

19     If the claim is indeed decedent's separate property, Cal. Prob. Code §
20 6401(c) governs.  Plaintiff appears to argue that under Cal. Prob. Code §

---

Inc., 229 Cal. App. 4th 1001, 1009 (2014).  Decedent's Fourth Amendment claim appears to be "of a purely personal nature."  While it survives decedent's death and passes to decedent's successor in interest under California's survivor action statute, see Cal. Civ. Proc. Code § 377.30, the survivor action statute explicitly states that "[n]othing in this chapter shall be construed as affecting the assignability of causes of action."  Cal. Civ. Proc. Code § 377.22.  Accordingly, Xochilt's purported assignment of her right to assert claims based on decedent's death as decedent's successor in interest is void.  See also Lee v. State Farm Mut. Auto. Ins. Co., 57 Cal. App. 3d 458, 465 (1976) ("[It is well established in California that an assignment of a cause of action for personal injuries is void[.]").

8

6401(c)(2)(B), decedent's surviving spouse would only receive one-half of decedent's separate property—including the right to pursue the Fourth Amendment claim—if "the decedent leaves no issue, but leaves a parent or parents or their issue or the issue of either of them." Cal. Prob. Code § 6401(c)(2)(B). Further, under Cal. Prob. Code § 6402, "the part of the intestate estate not passing to the surviving spouse[] under Section 6401" only passes to the decedent's parent "[i]f there is no surviving issue." Cal. Prob. Code § 6402. Accordingly, for plaintiff, as decedent's parent, to be the beneficiary of at least part of decedent's estate—specifically, the separate property not passing to Xochilt—plaintiff must show that decedent had "no surviving issue."

This brings the Court back to defendants' first Objection: that the Magistrate Judge did not recognize that "[d]efendants met their burden in showing that [d]ecedent… had a daughter, E.R. (minor child) with… Xochilt[.]" Obj. at 2. Defendants contend that decedent is the "presumed" parent of E.R. because his actions satisfy Cal. Fam. Code § 7611(d). For a parent to be the "presumed" natural parent of a child, Cal. Fam. Code § 7611(d) requires that "[t]he presumed parent receive[] the child into their home and openly hold[] out the child as their natural child." Cal. Fam. Code § 7611(d).

In their Objections, as in their motion, defendants point to deposition testimony from plaintiff, which states that decedent took E.R. to school, attended parent-child functions, and spent time with her. Obj. at 2. Defendants also point to a drawing that is included in a police report filed as an exhibit with their motion, Police Report P17-154418. See dkt. 111-2 at 54. Defendants describe this as a "framed drawing depicting decedent and E.R.… with the caption 'Daddy's Little Girl' that was taken at [d]ecedent's residence" on January 28, 2018. Obj. at 2. Defendants contend that this evidence shows that decedent held E.R. out as his daughter. Id. Defendants rely on the same police report for statements allegedly

9

made by Xochilt in reference to Xochilt and decedent's "shared daughter." Id. at 3. Defendants argue that this evidence was unrebutted by plaintiff and therefore shows the absence of genuinely disputed facts. Id.

The Court is not persuaded by defendants' Objection to the Magistrate Judge's findings regarding decedent's presumed parenthood over E.R. The Magistrate Judge did not rule on plaintiff's evidentiary objections to Police Report P17-154418 because she did not rely on it. See R&R at 4. The Court agrees with the Magistrate Judge that it was not necessary to rely upon Police Report P17-154418, as even assuming *arguendo* that it is admissible, it does not establish, as a matter of law, that decedent is E.R.'s presumed parent.[4] See id. This is because plaintiff has, at minimum, established genuine disputes of material fact as to both elements of Cal. Fam. Code § 7611(d). As for the first element, "receipt of the child into the home must be sufficiently unambiguous as to constitute a clear declaration regarding the nature of the relationship, but it need not continue for any specific duration." Charisma R. v. Kristina S., 175 Cal. App. 4th 361, 374 (2009). The Court agrees with the Magistrate Judge that there are genuine disputes as to whether E.R. was sufficiently "received" into decedent's home. Defendants rely

---

[4] Nevertheless, insofar as defendants seek to use the cited statements of the report to prove the truth of the matters asserted, it appears that this evidence is inadmissible. The police report itself may qualify as a public record under Federal Rule of Evidence 803(8). See United States v. Morales, 720 F.3d 1194, 1201 (9th Cir. 2013). However, the statements within the police report cited by defendants—decedent's alleged statement of "Daddy's Little Girl" and Xochilt's alleged statements referring to E.R. as their "daughter"—do not satisfy any other exception to the hearsay rule and therefore appear inadmissible. See United States v. Pazsint, 703 F.2d 420, 424 (9th Cir. 1983) ("It is well established that entries in a police report which result from the officer's own observations and knowledge may be admitted but that statements made by third persons under no business duty to report may not."). This is further support for the Magistrate Judge's finding that defendants have not proven, as a matter of law, that decedent received E.R. into his home and held her out as his own.

on plaintiff's deposition testimony, including that, from plaintiff's "understanding, [decedent] was very involved with [E.R.]. He would take her to school, take her to father/daughter functions at school and so forth, spend time with her." R&R at 16. However, if this was the extent of decedent's conduct in relation to E.R., it is not established, as a matter of law, that she was "recei[ved]" into his home.[5]

As for the second element—whether decedent "held out" E.R. as his own—the Court again agrees with the Magistrate Judge that defendants are not entitled to summary judgment, given that disputed facts remain. The Magistrate Judge correctly relied on deposition testimony from plaintiff in which plaintiff stated that he once told decedent to "love [E.R.] like your own daughter," suggesting that E.R. may not have actually been decedent's daughter or held out as decedent's daughter. R&R at 16. Furthermore, the Magistrate Judge relied on the following testimony from plaintiff: "There's rumors saying that that's [decedent's] daughter, but I don't know. I never seen any DNA test or anything. So I'm assuming it's his daughter -- it's his daughter." Id. at 17.

Viewing this evidence in the light most favorable to plaintiff, the Court concludes that a reasonable juror could find that plaintiff's reference to "rumors" suggests that decedent did not, in fact, hold out E.R. as his daughter. Accordingly, the Magistrate Judge was correct to find that defendants did not establish, as a matter of law, that decedent is E.R.'s presumed parent under Cal. Fam. Code §

---

[5] By way of comparison, in Jason P., the California Court of Appeal affirmed the trial court's finding that Jason's activities demonstrated a parental relationship that satisfied the "receipt" element of Cal. Fam. Code § 7611(d). Jason P. v. Danielle S., 9 Cal. App. 5th 1000, 1023 (2017). These included that: "Gus regularly spent time at the [New York] apartment when Jason was living there, Jason made arrangements with his assistant to accommodate Danielle and Gus during their visits, he and Gus went to the park when he was not working, he fed, played music for, and read to Gus, he arranged for an allergist to see Gus in New York, he obtained a baby gate to prevent Gus from falling down the stairs… and there was a room in the apartment that was designated as Gus' room[.]" Id. at 1022.

7611(d). Therefore, defendants are not entitled to summary judgment based on their argument that plaintiff lacks standing to assert his Fourth Amendment claim as a survivor action. See Cent. Delta Water Agency v. United States, 306 F.3d 938, 947 (9th Cir. 2002) ("[A]t the summary judgment stage[,] the plaintiffs need not establish that they in fact have standing, but only that there is a genuine question of material fact as to the standing elements.").

**B. Second Objection: Standing to Assert Fourteenth Amendment Claim**

Second, as to plaintiff's second claim, defendants object to the Magistrate Judge's finding that triable issues of fact exist regarding the familial relationship between decedent and plaintiff. Obj. at 4. Defendants contend that it is undisputed that the familial relationship between plaintiff and decedent is insufficient to confer standing on plaintiff to assert his Fourteenth Amendment claim. Id. As noted by the Magistrate Judge, parents have a constitutionally protected liberty interest in the companionship of their children, but may lack standing for insufficient or loss of familial relationship. R&R at 18, 20; see Kirkpatrick v. Cnty. of Washoe, 843 F.3d 784, 788–90 (9th Cir. 2016); Wheeler v. City of Santa Clara, 894 F.3d 1046, 1051 (9th Cir. 2018).

The Magistrate Judge concluded that plaintiff had met his burden to demonstrate a "genuine issue of material fact as to the sufficiency of his familial relationship" with decedent. R&R at 21. In making this determination, the Magistrate Judge relied on the following facts proffered by plaintiff: that although plaintiff was incarcerated for most of decedent's childhood, plaintiff "made a point of seeing [d]ecedent" whenever plaintiff was not incarcerated; plaintiff fed decedent out of a bottle a few times as an infant; plaintiff attended decedent's second birthday party; after release on parole in 1999, plaintiff saw decedent "[e]very day, every chance [he] had"; plaintiff took decedent shopping for school clothes and CDs; and decedent visited plaintiff multiple times in 2000 and 2001

when plaintiff was incarcerated by the county, but did not visit plaintiff after he went to prison, as it was "emotionally difficult on decedent." Id. Further, the Magistrate Judge noted that plaintiff and decedent stayed in touch via phone when plaintiff was incarcerated, speaking "two or three times a week," and corresponded at one point through letters. Id. at 21-22. On the other hand, the Magistrate Judge described evidence in the record that indicated "distance" in the relationship between plaintiff and decedent, including plaintiff's time in solitary confinement. Id. However, because the "evidence must be seen in the light most favorable to [p]laintiff" in these circumstances, the Magistrate Judge found that summary judgment was not appropriate. Id. at 22.

Defendants object on the grounds that plaintiff's lengthy incarceration, years spent in solitary confinement without access to a phone, and prohibition from communicating with other convicted felons, including decedent, show that he could not have possibly maintained a familial relationship with decedent. Obj. at 4-5. Defendants contend that in the brief periods that plaintiff was not incarcerated, plaintiff lived with his father, not with decedent. Id. at 5. Relying on Nash-Perry v. City of Bakersfield, defendants argue that a minor child living with his father for only a two-month period demonstrates a lack of familial relationship for standing purposes. Obj. at 5; Nash-Perry v. City of Bakersfield, No. 1:18-CV-01512 JLT, 2021 WL 3883681, at *14 (E.D. Cal. Aug. 31, 2021).

As an initial matter, Nash-Perry is not binding on this Court. Further, Nash-Perry did not find that Fourteenth Amendment standing can be decided *solely* on the length of time that a father and child live together; rather, it weighed several factors, including whether the decedent was married to the mother of the child and whether the decedent provided parental care for the child. Nash-Perry, 2021 WL 3883681, at *14. Here, the Court finds that the Magistrate Judge correctly weighed relevant facts about plaintiff's conduct in relation to decedent, as opposed

13

to deciding the issue on one fact alone.  See Wheeler, 894 F.3d at 1058 ("Judicially enforceable Fourteenth Amendment interests require enduring relationships reflecting an assumption of parental responsibility and stem[ ] from the emotional attachments that derive from the intimacy of daily association, and from the role it plays in promoting a way of life through the instruction of children.") (citations and quotations omitted).  Additionally, the Court agrees that plaintiff's testimony provides sufficient evidence for a reasonable juror to find that a familial relationship cognizable under the Fourteenth Amendment existed, when construed in the light most favorable to plaintiff.  R&R at 22.

**C. Third Objection: Reasonableness of Use of Force**

Next, defendants object to the Magistrate Judge's decision to deny the motion on the grounds that there is a genuine dispute of fact as to the reasonableness of force applied by defendants.  Obj. at 6.  The Court agrees with the Magistrate Judge that the alleged Fourth Amendment violations involve questions of fact, which are best suited for a jury to decide.  R&R at 33.

Defendants argue that the Magistrate Judge failed to consider physical evidence and applied undue weight to the testimony of witnesses, Lisa Castillo ("Castillo") and Stephanie Lucio ("Lucio"), at the scene.  Obj. at 6.  Despite defendants' reliance on the firearm in decedent's pocket and DNA evidence to support their claim, this Court finds that a reasonable juror could still choose to credit the witnesses' account, who "saw [d]ecedent prior to and during the second volley of gun shots… and 'saw no indication [d]ecedent possessed a gun despite having close contact with him before and during the shooting."  R&R at 28.

Further, defendants argue that because neither witness's testimony accounts for the entire encounter between decedent and defendants, there is no triable issue of fact as to decedent's furtive movements.  Obj. at 8.  Defendants argue that the testimonies from plaintiff's witnesses and defendants' witnesses are not

14

inconsistent, because they all suggest that decedent reached towards a gun in his pocket while out of the eyesight of plaintiff's witnesses. Id. Although plaintiff's witnesses did not view decedent's movements for the entirety of the encounter, the Court concludes that the moments in which they saw decedent, as well as whether and when decedent allegedly reached for a gun, are factual questions that remain in dispute. A reasonable fact-finder may conclude that during at least one of the instances in which defendants allege that decedent reached for the gun, Castillo and Lucio could see decedent. Again, defendants' arguments center on the witnesses' credibility, which is not appropriately adjudicated on summary judgment. See Cockrum v. Whitney, 479 F.2d 84, 86 (9th Cir. 1973) ("It is the jury, not the judge, which… judges the credibility of witnesses").

Additionally, defendants assert that "inconsistencies" found by the Magistrate Judge between the defendant officers' statements were based on their differing physical viewpoints of decedent, and therefore, their joint account is consistent and undisputed. Obj. at 9. The Court is not persuaded by this argument. While a reasonable juror could find that differences in Wright's and Soria's testimony were due to their differing viewpoints, a reasonable juror could also find that their testimony was inconsistent and therefore not credible. Specifically, the Court agrees with the Magistrate Judge that, based on the officer interviews, a reasonable juror could conclude that Soria suggested that decedent did not fall to the ground until after the second volley, while Wright suggested that decedent was already on the ground when the second volley began. See R&R at 31-32.

Accordingly, defendants' Objections do not resolve the disputed facts as to the reasonableness of the officers' use of force. Therefore, the Magistrate Judge correctly determined that summary judgment should be denied on plaintiff's Fourth Amendment claim.

### D. Fourth Objection: Qualified Immunity

Lastly, defendants assert that they are entitled to qualified immunity, arguing that the Magistrate Judge failed to cite applicable cases to support her position and "relied on facts not in evidence, and ignored facts that were in evidence." Obj. at 11. Defendants do not raise any new facts or case law to support their position, casting doubt on the validity of this Objection. See Chith, 2021 WL 4744596, at *1 ("Objections to a R&R are not a vehicle to relitigate the same arguments carefully considered and rejected by the Magistrate Judge.").

Nevertheless, the Court finds that Garner, Andrews, and Estate of Lopez, as cited in the R&R, are sufficiently applicable to the present case for the reasons set forth by the Magistrate Judge. R&R at 34; Tennessee v. Garner, 471 U.S. 1, 3-4 (1985); Andrews v. City of Henderson, 35 F.4th 710, 719, 720 (9th Cir. 2022); Estate of Lopez v. Gelhaus, 871 F.3d 998, 1001–04, 1006–13 (9th Cir. 2017).

In accordance with the Magistrate Judge, this Court finds that there are genuine disputes of material fact as to decedent's actions leading up to and during defendants' use of force. Accordingly, summary judgment on the basis of qualified immunity is not appropriate. See Rosenbaum v. City of San Jose, 107 F.4th 919, 924 (9th Cir. 2024) ("Where factual disputes exist as to the objective reasonableness of an officer's conduct, the case cannot be resolved at summary judgment on qualified immunity grounds.").

Examining Garner, Andrews, and Estate of Lopez and the facts of the present case in the light most favorable to plaintiff, the Magistrate Judge correctly determined that defendants would have been on notice of clearly established law that it was unreasonable to use deadly force against decedent. R&R at 35-36; see also Mullenix v. Luna, 577 U.S. 7, 12 (2015) ("We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate."). As noted by the Magistrate Judge, "[h]ere, those facts

would be that [d]ecedent did not reach for his pocket, that he did not turn toward [d]efendants, that he did not make any other furtive or threatening movements, that he was not facing toward [d]efendants when he was shot in either instance, and that no objectively reasonable officer during any part of the incident would have believed that he posed a threat to [d]efendants or to others." R&R at 35.

In sum, the Court agrees with the Magistrate Judge's recommendation to deny defendants' motion, because reasonable jurors could draw different inferences from plaintiff's and defendants' evidence, and the Ninth Circuit has held that "summary judgment should be granted sparingly in excessive force cases." See Gonzalez v. City of Anaheim, 747 F.3d 789, 795 (9th Cir. 2014).

**V. CONCLUSION**

Having completed its review, the Court accepts the findings and recommendations set forth in the R&R. Accordingly, IT IS ORDERED that defendants' motion for summary judgment is **DENIED**.

Dated: July 30, 2025

*Christina A. Snyder*

HONORABLE CHRISTINA A. SNYDER
UNITED STATES DISTRICT JUDGE