JAMES JOHNSON, City Attorney, SBN 234962
REBECCA L. MCKEE-REIMBOLD, Asst. City Attorney, SBN 279485
NADIN S. SAID, Sr. Deputy City Attorney, SBN 309802
AISHA C. NOVASKY, Deputy City Attorney, SBN 328120
**OFFICE OF THE CITY ATTORNEY – City of Riverside**
3750 University Avenue, Suite 250
Riverside, California 92501
Telephone: (951) 826-5567
Facsimile: (951) 826-5540
orange@riversideca.gov

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

ERIC HENRY SALDIVAR, SR.

Plaintiff,

v.

RIVERSIDE POLICE DEPARTMENT, ET AL.

Defendants.

**CASE NO.: 2:20-cv-02081-CAS-PDx**

**DECLARATION OF AISHA C. NOVASKY IN SUPPORT OF DEFENDANTS' MOTION IN LIMINE NO. 1**

Operative Complaint Filed: 03/23/2022
Pretrial Conference: 12/07/2026
Trial Date: 01/10/2027

**DECLARATION OF AISHA C. NOVASKY**

I, Aisha C. Novasky, declare the following:

1. I am an attorney at law, duly authorized to practice before this Court. I am a Deputy City Attorney with the Riverside City Attorney's Office, attorneys of record for Defendants Abel Soria and Evan Wright in the instant case.

2. I have personal knowledge of the matters stated herein, except those stated upon information and belief, and to those matters, I believe them to be true. If called to testify to the matters herein, I could and would testify competently thereto.

**LOCAL RULE 7-3 CONFERENCE**

3. On November 3, 2026, at 2:00 p.m., I spoke with Plaintiff's counsel to discuss the instant motion. The parties reached an impasse, thereby resulting in the filing of Defendants' Motion in Limine No. 1.

**EVIDENCE**

4. Attached hereto as **Exhibit A** is a true and correct copy of excerpts of a March 9, 2018 interview with Defendant Abel Soria.

5. Attached hereto as **Exhibit B** is a true and correct copy of excerpts of a March 9, 2018 interview with Defendant Evan Wright.

6. Attached hereto as **Exhibit C** is a true and correct copy of a September 7, 2017 warrant for Ernie Saldivar's arrest.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 9th day of November, 2026, at Riverside, California.

By: ______________________________

Aisha C. Novaskv. declarant

CITY ATTORNEY'S OFFICE
3750 UNIVERSITY AVE, STE. 250
RIVERSIDE, CALIFORNIA 92501
(951) 826-5567

# "Exhibit A"

JOHNSON: Okay.

SORIA: It sounded like---

JOHNSON: Okay, but he didn't hit her?

SORIA: He didn't hit her, no. No.

JOHNSON: Okay, and how many times---or how often had you guys been out looking for the suspect?

SORIA: I think with that---That was the first time we all came out as a search warrant, and then after that I believe maybe two additional times, and today was the third time.

JOHNSON: Okay, or the third time that you're aware of?

SORIA: Yeah, that I---that I'm aware of.

JOHNSON: Okay. So what led you to the house today?

SORIA: My partner's close contact with one of the game detectives that's also assisting in the case, and he provided him with an address where the suspect may be staying at, and this is how we got to Jurupa Valley and set up on the address.

JOHNSON: Okay, and what was the plan?

SORIA: The plan was we had six officers with us, so myself, my partner, Evan Wright, and Officer Lopez were going to get in the van and conduct surveillance in a UC vehicle on the primary residence. Officer Park and Pap, they were going to be our take down unit, in the event that we did see the suspect get in a vehicle, they were going to do a traffic stop on him, and our other partner, Officer Monreal, he was in the office finishing up paperwork, and when he was done, he was going to come in a UC vehicle and sit point and keep eyes on the primary residence as well. So for us in the van, if we

RIVERSIDE POLICE DEPT - Restricted Information
Public Records Act Request
JPEDROZA 12/16/2019 11:01 AM Unauthorized Release PROHIBITED

saw the suspect like walking out to the driveway or something, we were going to roll up and essentially exit the van and try to take him into custody to the front of the residence.

JOHNSON: Okay, and had you ever contacted the suspect in the past?

SORIA: I have never contacted him before, no.

JOHNSON: Okay. Okay, so then what happened after you guys came up with your plan? What happened?

SORIA: Well, we were initially---we were conducting surveillance on the house, and we were watching the garage where he was staying at, and we could see three individuals in there, two males and one female. One of them, the suspect was wearing a black shirt. He fit the description. Tattoos kind of matched, but we were kind of far away with binoculars, so we couldn't 100% identify that it was him. So---

JOHNSON: And when you were set up in the van where---what---I guess where were you in relation to the house?

SORIA: Oh, we were---Where the residence is at, we were set up several houses east of. I'm not sure of the exact distance, but we were east of the residence.

JOHNSON: All right. I actually have a little map here. Well, very rudimentary.

SORIA: Okay, that's fine.

JOHNSON: Okay. So there's north, there's Willow Brook, I guess that's the western most street, what's that Fox Borough?

SORIA: Yeah, I believe so.

JOHNSON: Okay, and here's the house. Now, about where were you guys?

SORIA: So we were like a little past Fox Borough.

RIVERSIDE POLICE DEPT Restricted Information
Public Records Act Request
JPEDROZA 12/16/2019 11:0 AM Unauthorized Release PROHIBITED

JOHNSON: And at that time, does the suspect---did he have a warrant of any sort?

SORIA: Yeah. We---Yeah, he had---

JOHNSON: Was there a warrant in the system for the---

SORIA: He had a parole violation.

JOHNSON: Okay, and that was the only one?

SORIA: That was the only one, and he was still under investigation for the shooting in our city.

JOHNSON: Okay.

SORIA: As well, but they couldn't 100% identify that he was the shooter, so basically---their still---investigation needed to confirm that.

JOHNSON: Got it. Now, was the parole violation, was that issued because of this investigation?

SORIA: Yes.

JOHNSON: Or was it just because he's just---

SORIA: It was---No, it was because of the investigation.

JOHNSON: Just because he doesn't know how to act.

SORIA: Yeah.

JOHNSON: Okay. Okay. So from there, as you guys were making---or once you got---you contacted your supervisor, you were saying?

SORIA: Yes.

RIVERSIDE POLICE DEPT - Restricted Information
Public Records Act Request
JPEDROZA 12/16/2019 11:01 AM Unauthorized Release PROHIBITED

JOHNSON: And that's a---like a---

SORIA: It shoots out like sponge rounds or---

JOHNSON: Sponge---Yeah, like bean bag rounds or something?

SORIA: Yeah, it's---No, it's an actual---It looks like a sponge. It's impact ammunition that I primarily carry when we do operations.

JOHNSON: Okay, and you guys had---I guess your stack already designated?

SORIA: Yes.

JOHNSON: Okay. What was that stack if you can recall right off hand?

SORIA: I know Evan was primary, he was one. I was going right behind him, two, with less lethal, and I can't remember where it was behind us with Park, Pap, and Sancho.

JOHNSON: Okay. Okay. So as you guys dismounted, what happened?

SORIA: We parked in front of the residence, and we made our approach towards the open garage where we saw all the people hanging out, and as soon as we pull in the driveway and get into view of the garage from outside of the driveway, immediately I see Ernie, and I'm like okay, 100%, that's the guy we're looking for. I identified him. You could clearly see the tattoos that he has, you can see the tattoos on his eyes, and I had seen his picture before, so I knew 100% that it was him. So told them we were the police. I could see the other people on---I could see people to my right. I wasn't 100% sure who they were, because I keyed in on him, and immediately as soon as that happened, he reached down. I believe it was with his right hand, reached down towards like his pocket area. I'm not---I wasn't 100% sure, but towards the pocket area, and he starts reaching for an object, and like immediately I was like that's a gun, you know, it's a gun, and he turns around and starts to walk away from us, and I'm giving him commands, and

RIVERSIDE POLICE DEPT - Restricted Information
Public Records Act Request
Unauthorized Release PROHIBITED
JPEDROZA 12/16/2021 9:11:01 AM

as we're giving him commands, we're pursuing him now, and he starts looking at us, and at that point I'm thinking he's going to shoot us with the gun, so I'm like you know, he's going to shoot my---kill me or my partner, and I engaged him. I don't know how many rounds, but I---at that point I fired at him as he was walking towards. There was like an open door in to like a laundry room.

JOHNSON: Okay. So basically you transitioned from your 40 millimeter to your pistol?

SORIA: No, I'm---I carry the 40 millimeter, but I always run primary with my pistol, and if I have to switch to use the 40 millimeter, then I do that. Like if I get a suspect, he's you know, hands up, uncooperative, I'm going to holster up, and then I'll be primary less lethal on that suspect.

JOHNSON: Okay.

SORIA: But when we initially rolled up, I'm always holding my handgun.

JOHNSON: Always lethal?

SORIA: Yeah.

JOHNSON: Okay. Now, when you said you identified yourself as police, how many times did you say---if you can recall?

SORIA: Yeah, I can't remember. I just---I'm pretty sure I said it was police department, get on the ground.

JOHNSON: Okay.

SORIA: Get on the ground, that's just kind of---For me that's just what I always say, and I'm pretty sure I said that, but I'm not 100% positive.

JOHNSON: Okay. Now, you had also mentioned that basically you knew when he reached down towards his pocket, you knew that he had a gun. Tell me about that. How did you know? What's your experience with that?

RIVERSIDE POLICE DEPT - Restricted Information
Public Records Act Request
JFEDROZA 12/16/2019 11:00 AM Unauthorized Release PROHIBITED

SORIA: Yeah, I---Yeah, just the way he reached down and was tugging on it, it was---The way his hand was, it looked like he was grabbing something, the same way somebody would grab a gun, and he was just trying to pull it out. You could see the franticness in his face and just when he turned around, and he just---It wasn't a normal, somebody trying to flee. We've contacted---I've contacted several people, and I know when they flee, they turn on a---they go in a full on sprint.

JOHNSON: Right.

SORIA: This wasn't a full on sprint. He was trying to get something. He couldn't, so now he's trying to back away, but at the same time still looking, trying to pull, and I don't know, I just keyed on it, just---I was---It was a gun, you know, like this is a gun.

JOHNSON: Yeah. Have you been in that situation before where this---the potential suspect has you know, made similar type of movements?

SORIA: I've been in one where a suspect threw a gun, but I was at a far distance from him, but it was yeah, same type of movement. He pulled out a gun and he threw it.

JOHNSON: Okay. Now, as he---So you---The way you would describe that he was reaching---Was it like towards the front of his waistband or---

SORIA: I'm not 100% positive, but it looked like it was like the right side, like the right side of his body.

JOHNSON: Okay.

SORIA: So maybe a pocket, the waistband. I wasn't 100% positive.

JOHNSON: But he was reaching for something over in that area?

SORIA: Yeah, somewhere in this area, yeah, general area.

RIVERSIDE POLICE DEPT - Restricted Information
Public Records Act Request
Unauthorized Release PROHIBITED
JFEDROZA 12/16/2019 11:01 AM

GOMEZ: Did you guys go up in a stack or just---

SORIA: We went up and yeah, it was a line. I was the---I'm pretty sure the guys behind me were in a stack formation as we're coming up, but honestly I didn't look at them, but normally that's how we do roll up, we're in a stack as we're coming up to the house.

GOMEZ: And your position in that stack is what?

SORIA: For today's particular incident I was behind Officer Wright.

GOMEZ: Okay. So it's Wright, then you, then---

SORIA: Yeah.

GOMEZ: ---who?

SORIA: Behind me, I don't remember who was behind me.

GOMEZ: Okay. Before you guys rolled up, I mean was there any radio traffic that you were aware of before you pulled up in front of that residence? Like did Monreal put out anything, anyone else?

SORIA: Oh no, yeah. No, I don't recall that, no. I remember us just stopping in front of the house. I don't hear any radio traffic, and we just started moving up towards up the driveway.

GOMEZ: And from when you guys were on point, you saw three individuals?

SORIA: We saw three for sure, yeah. There was a---Maybe four, but it was three. Three for sure, but it could have been the same person that we may be identified as another person, but for sure I saw three people. Two males, and one was wearing a gray shirt. One was wearing a black shirt, which looked like our primary, and then a female that was also in the garage with them.

RIVERSIDE POLICE DEPT - Restricted Information
Public Records Act Request
JPEDROZA 12/16/2019 11:0_ AM Unauthorized Release PROHIBITED

GOMEZ: Okay. So when you roll in, I mean you didn't hear anything about anyone coming out of the garage or anything like that?

SORIA: Out of---Coming out of the garage, no. I---Remember I keyed in on the suspect. I keyed in on him, and usually I rely---I trust my guys, so I know that the guys behind me, they'll handle another---if there's another threat, that they'll take care of that. Just kind of what we're---

GOMEZ: Okay, and you said you keyed in on your person of interest?

SORIA: Yes. I saw them through my peripherals, and I remember them, you know, they weren't doing anything crazy. They were just kind of like moving back. I didn't---and then I just focused on him.

GOMEZ: When is it that you see---and we're talking about this person, it's Ernie, right?

SORIA: Yes, Ernie.

GOMEZ: Salvador, I believe it is.

SORIA: I'm not 100---His last name starts with an S, yeah, but his first name is Ernie for sure.

GOMEZ: All right. This Ernie, where is it that you see him initially?

SORIA: As we go up the driveway, he's in that garage. He's initially right in front of us. Right there in the garage, and they---I'm not 100% positive, but they were maybe to his right. I don't remember, but I---

GOMEZ: Who's right?

SORIA: Ernie's. Or maybe his left, Ernie's left, my right, but I just focused on him. I just keyed in on him.

GOMEZ: And what was his initial reaction from what you could see?

RIVERSIDE POLICE DEPT - Restricted Information
Public Records Act Request
JPEDROZA 12/16/2019 11:01 AM Unauthorized Release PROHIBITED

GOMEZ: And I mean---You've been---How long have you been with the department?

SORIA: Going on ten years.

GOMEZ: Ten years.

SORIA: Yeah.

GOMEZ: Have you had encounters with other suspects that have been armed in the past?

SORIA: Yeah, I have.

GOMEZ: Okay, and I mean usually where do these guys carry their guns?

SORIA: Their waistband, you know, or pocket, but most of the time I see it in their waistband.

GOMEZ: So this is something you've dealt with in the past and you're more than familiar with the fact that this guy's most likely armed or possibly armed, he's definitely not following commands, and I mean did that heighten your awareness of the possibility that this guy could turn around and shoot at you?

SORIA: It did, yeah. It did.

JOHNSON: And just to go back---I'm pretty sure you answered it already, but when you were getting---When you guys were getting the information from the gang investigator with the informant, what was that information that that investigator relayed to you guys?

SORIA: He told us that he was armed. He said that for sure that Ernie was armed, and that he knew he was wanted, and that's why he was kind of moving around from location to location. I know---I'm not 100% sure, but I remember even at one point my partner even told me that he had his own lookout that was looking out for him in case like the police were looking for him.

RIVERSIDE POLICE DEPT - Restricted Information
Public Records Act Request
JPEDROZA 12/16/2019 11:01 AM Unauthorized Release PROHIBITED

JOHNSON: Now was that the information you had---Had you guys received that information on your previous attempts to apprehend him that he was possibly armed?

SORIA: Yeah. It's all information that we were obtaining yeah, when we were trying to apprehend him in the past.

JOHNSON: Okay, and was that always---I guess on those other instances, was that also information that was relayed to you guys from an informant or---you guys would obtain that you know, pretty much from an informant?

SORIA: The gang detective, he was---Like I said, he was in close contact with my partner.

JOHNSON: Okay.

SORIA: And he provided him with that information.

JOHNSON: Okay.

SORIA: So if he obtained---I believe he obtained it from an informant, but I'm not 100% positive.

JOHNSON: Okay.

SORIA: But he did give that information to---

JOHNSON: And said yeah, that he's armed and he---

SORIA: He's armed, yeah.

JOHNSON: ---know that you guys are out hunting him down.

SORIA: Yeah.

RIVERSIDE POLICE DEPT - Restricted Information
Public Records Act Request
JPEDROZA 12/16/2019 11:01 AM Unauthorized Release PROHIBITED

# "Exhibit B"

ETHIR: Okay. Was there any doubt in your mind at both of the instances where you fired your weapon, that he was trying to kill you or your partner?

WRIGHT: I didn't have any doubt, no.

COOK: You mentioned that the C---the gang detective told you that his CI had informed him that this guy was armed, potentially armed?

WRIGHT: Yes.

COOK: Okay. Did you relay that information to the members of your team?

WRIGHT: Yes.

COOK: Okay, and also when you came around the corner, you mentioned that when you were using the binoculars, that you were pretty sure you were dealing with your suspect. I know it happened rather quickly, but he has that large Riverside tattoo over his neck, did you notice that when you first laid eyes on him? Did you know oh, I have the right guy?

WRIGHT: That's the first thing I noticed was that tattoo.

COOK: Okay, thank you. That's all I have.

GOMEZ: And I was going to ask that. Obviously this guy got taken into custody at one point in time. Do you remember who put him in cuffs?

WRIGHT: I don't really remember. I---If I could take a guess, it would be Monreal, you know what I mean, but I mean I wasn't for sure.

GOMEZ: When he was taken into custody, was anything found on him at that point in time?

WRIGHT: He had mentioned that there was a gun on him, but---

ETHIR: Who's he, just so the record's clear.

RIVERSIDE POLICE DEPT - Restricted Information
Public Records Act Request
Release PROHIBITED
JPEDROZA 12/16/2019 11:00 AM Unauthorized

JOHNSON: Okay. Tell me about that.

WRIGHT: So basically we've been looking for this guy, Ernie Saldavar, gang member, wanted on parole violation. He shot at his girlfriend in August, 2017, and on that day we got called out---The SWAT team got called out to do surveillance and conduct probation/parole searches and search warrants to try to find him, but we couldn't find him. We couldn't find the firearm. So basically we just been looking for this guy ever since, and on Tuesday, I got information from a gang detective that his CI told him that Ernie was at this house, which was---What was the street, Meadow Brook or something. Yeah, he was over at that house.

JOHNSON: Yes.

WRIGHT: Where the shooting happened, so---

JOHNSON: Okay. Now, as far as this surveillance and trying to track this guy down, was that like something that you were assigned to or was it just kind of a group effort?

WRIGHT: Well, basically---Yeah, so before we went out there, I you know, briefed the whole team. The whole team knows about this guy, they've seen this guy before, so each person had you know, a role and responsibility to---for the surveillance.

JOHNSON: Okay. What I mean was were you like the case agent, I guess for your team?

WRIGHT: Yeah, I was going to handle it

JOHNSON: For your team.

WRIGHT: Yeah.

JOHNSON: You're trying to track this guy down.

RIVERSIDE POLICE DEPT Restricted Information
Public Records Act Request
Unauthorized Release PROHIBITED
JPEDROZA 12/16/2019 11:00 AM

# "Exhibit C"

SEP. 7. 2017 8:21AM NO. 445 P. 1

RECEIVED
Superior Court of California
County of Riverside
9/7/2017
ljenson
By Fax

DAPO Warrant ID:1709182460 CR-301

SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE

STREET ADDRESS: 311 E. RAMSEY STREET
MAILING ADDRESS:
CITY AND ZIP CODE: BANNING 92220
BRANCH NAME: RIVERSIDE COUNTY SUPERIOR COURT - BANNING JUSTICE CENTER

FOR COURT USE ONLY

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE
SEP 07 2017
L. JENSON

PEOPLE OF THE STATE OF CALIFORNIA
vs
SUPERVISED PERSON: SALDIVAR, ERNIE DAVID

WARRANT REQUEST AND ORDER
☒ PAROLE ☐ PRCS

| CII No.: | CDCR No.: | FBI No.: | CASE NUMBER: |
|---|---|---|---|
| A23950373 | V37006 | 9229XB8 | BPR1701169 |

GS
SEP 07 2017
BA

**CONVICTION AND SUPERVISION INFORMATION:**
The supervised person was convicted of the following offenses:
PC29800(a)(1)[01] Poss/Own F'Arm by Felon or Addict
on (date): 10/10/2012 in case number(s): RIF1200663 and sentenced to: 6 Years

The supervised person was released on supervision on (date): 06/25/2017
Supervision is scheduled to expire on (date): 06/22/2020

**WARRANT REQUEST**
A warrant is being requested because:
☐ The supervised person has absconded and his or her whereabouts are unknown.
☒ The supervised person has committed a new offense (specify offense):Attempted Murder
☐ The supervised person has violated the following term(s) or supervision *(specify)*:

☐ Other *(specify)*:
To be entered into the ☐ state (WPS) ☒ national (NCIC) warrant system(s).
**DECLARATION**
*(State facts that establish probable cause for the warrant. If more space is needed, attach the* Attached Declaration *(form MC-031).)*
See MC-031

**INFORMATION ABOUT THE SUPERVISED PERSON**
Name:SALDIVAR, ERNIE DAVID Alias:
DOB: 08/06/1986 Gender: M Race:HIS Height: 5'10" Weight: 189 Hair: BLK Eyes: BRO
Tattoos: Other:
Last Known Address: 4251 LANGSTON PL, RIVERSIDE CA 92507-5049
☒ Armed and dangerous. ☐ Possible mental disorder.
I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:09/05/2017 LONG, BRYANT Parole Agent RIV#1 [signature]
TYPE OR PRINT NAME AND TITLE SIGNATURE

**ORDER**
☒ Based on the above declaration and information, the court finds probable cause to arrest and orders a ☒ No Bail ☐ Bail Amount (specify): warrant for the arrest of the supervised person described above to be entered into the ☐ state (WPS) ☒ national (NCIC) warrant system(s).
☐ The Court also summarily revokes supervision and tolls the running of the supervision period.
☐ Request Denied. The court finds no probable cause to arrest.

For court use only

Date: 9/7/17 Time: 1:30 Location: Banning [signature]
JUDICIAL OFFICER

Page 1 of 1

Form Approved for Optional Use
Judicial Council of California
CR-301 [New July 1, 2013]

WARRANT REQUEST AND ORDER

Penal Code, §§ 1203.2, 3008.08, and 3455
www.courts.ca.gov

SEP. 7. 2017 8:22AM NO. 445 P. 2

MC-031

| PLAINTIFF/PETITIONER: STATE OF CALIFORNIA<br>DEFENDANT/RESPONDENT: SALDIVAR,ERNIE DAVID V37006 | CASE NUMBER:<br>BPR1701169 |
|---|---|

## DECLARATION

*(This form must be attached to another form or court paper before it can be filed in court.)*

Parolee Saldivar is in violation of parole condition number two which states,unless other arrangements are approved in writing, you shall report to your parole agent on the first working day following your release. The name, address, and telephone number of the parole agent responsible for your parole supervision shall be documented on the CDCR Form 611 (Rev. 08/12), Release Program Study, which is incorporated by reference as part of this Notice. You shall inform your supervising parole agent of your residence, employment, education, and/or training. Any change or anticipated change to your residence shall be reported to your parole agent in advance. You shall inform your parole agent within 72 hours of any change to your employment location, employer, or termination of employment.

On 9/5/2017 agent of record received a phone call from Riverside detective Ohno, stating parolee Sadivar was listed as a suspect in a attempted murder that occurred on or about 8/26/2017, where parolee apparently shot at his exit wife at his address of record. It was stated that parolee Saldivar's ex wife came to parolee's residence and they got into an argument, and parolee Saldivar shot at his ex wife at the residence. On 9/5/2017 agent of record attempted to contact parolee via phone calling his residence of record and was informed by his grandmother that he has not been home since last Saturday. Agent of recored checked local jails and hospitals and was unable to locate parolee Saldivar. Parolee Saldivar has a CRSA score of 5 which indicate a high propensity for violence.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 09/05/2017

Bryant Long PA1 RIV#1
(TYPE OR PRINT NAME)

(SIGNATURE OF DECLARANT)

☐ Attorney for ☐ Plaintiff ☑ Petitioner ☐ Defendant
☐ Respondent ☐ Other *(Specify)*: